FILED

FEB - 1 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 05-17886-B-7 |
| Dean Clifton Marshall, Jr., | |
| Debtor. | |
| Teresa Marshall, | Adversary Proceeding No. 06-1101 |
| Plaintiff, | |
| v. | |
| Dean Clifton Marshall, Jr., | |
| Defendant. | |

**MEMORANDUM DECISION REGARDING COMPLAINT
TO DETERMINE THE DISCHARGEABILITY OF DEBT AND
DENY THE DISCHARGE OF THE DEBTOR**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

Susan J. Salehi, Esq., appeared on behalf of plaintiff, Teresa Marshall ("Teresa").

David R. Jenkins, Esq., appeared on behalf of debtor/defendant, Dean Clifton Marshall, Jr. ("Dean").

This adversary proceeding concerns Dean's right to a discharge, both generally and specifically. Teresa is Dean's former spouse and a creditor of the bankruptcy estate following dissolution of their marriage. She argues that Dean's specific obligation to pay certain marital debts is nondischargeable under 11 U.S.C. § 523(a)(2)(A)[1] based on actual fraud. In addition, Teresa argues that Dean should be denied a general discharge under § 727(a)(4)(A) based on, *inter alia*, a false oath made in connection with the disclosure and valuation of assets in his bankruptcy schedules. This adversary proceeding was tried before the court and taken under submission. For the reasons set forth below, Dean's general discharge will be denied pursuant to §727(a)(4)(A). Teresa's request for additional relief under § 523(a)(2)(A) will be denied.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52 (made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052). The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and §§ 523 and 727 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

## BACKGROUND AND FINDINGS OF FACT.

### The Marital Dissolution Action.

Dean and Teresa were married for approximately ten years. Dean has been employed by the Kern County Sheriff's Department since 1990. In 2001, Dean was promoted to the position of Detective and he currently works as a homicide investigator. Teresa is a registered nurse. They have two children. The couple separated in September 2003, and Teresa filed a petition in state court to dissolve their marriage in March 2004 (the "Dissolution Action").

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *prior* to October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L.109-8, Apr. 20, 2005, 119 Stat. 23.

2

1    During the course of the Dissolution Action, issues arose relating to the
2  classification and division of separate and community property. An inventory prepared
3  by Teresa with the permission of the state court during the Dissolution Action listed and
4  described, *inter alia*, 33 firearms and a valuable gun safe. Dean testified under penalty of
5  perjury in the Dissolution Action that he owned the firearms and the gun safe. The state
6  court determined that the gun safe and three of the firearms were community property,
7  having been purchased during their marriage, but that the remainder of the firearms were
8  obtained by Dean either prior to the marriage or by inheritance.

9    Ultimately, Dean and Teresa negotiated a "settlement" with regard to the division
10  of property. Teresa was awarded the marital residence and agreed to give up her one-half
11  interest in Dean's pension plan. The state court granted possession of the gun safe and all
12  firearms to Dean. Teresa is a licensed hunter and is familiar with guns. She estimated
13  that the guns had a value at the time of their divorce of approximately $25,000.
14  Reciprocally Dean agreed to be responsible for approximately $36,000 of credit card debt
15  incurred during the marriage (the "Marital Debt"). Dean was also awarded a 1996
16  Bayliner boat and agreed to pay the debt secured by the boat in the approximate amount
17  of $4,600. A final judgment was entered in the Dissolution Action on June 22, 2005.
18  **The Bankruptcy.**

19    Unbeknownst to Teresa, while the Dissolution Action was winding through its
20  final stages, Dean retained the services of a bankruptcy attorney, Robert S. Williams, Esq.
21  ("Williams") in February of 2005. Dean paid Williams a $291 deposit toward Williams'
22  attorney fees and the $209 filing fee for a chapter 7 petition. Dean completed a
23  questionnaire given to him by Williams. Williams then used the information provided on
24  that questionnaire to draft Dean's bankruptcy schedules. It was Williams' usual practice
25  to list on the bankruptcy schedules a zero balance for any checking or savings account
26  which clients represented to have a "minimal" balance of $500 or less. It was also
27  Williams' practice to provide a completed draft of the schedules to his clients to review
28  for accuracy and completeness before they were signed and filed. Clients were given a

3

1 place to review their documents and they could also take the documents home to review.

2 Dean testified that he received a draft of the schedules, prepared from information on his

3 questionnaire, that he "skimmed" the documents with Williams, made no changes, and

4 signed them attesting under penalty of perjury to their truthfulness and accuracy.[2]

5 Dean's petition was filed on September 26, 2005, about three months after

6 judgment was entered in the Dissolution Action. Significant assets were omitted from

7 Schedule B, the Statement of Personal Property. In addition, Dean's Statement of

8 Financial Affairs declared that Dean held no property belonging to someone else. Dean's

9 Schedule B listed, in pertinent part:

10    1.    Kern Schools Federal Credit Union, Bakersfield, CA - checking and savings - minimal balances valued at zero;

11

12    2.    Kern Schools Federal Credit Union, Bakersfield, CA - savings - minimal balance valued at zero;

13    3.    Household goods and furnishings valued at $100;

14    4.    Two firearms valued at $1,000; and

15    5.    County of Kern pension, unknown value. An *amended* Schedule B listed the value at $20,564.61.

16

17 Dean's schedules were materially inaccurate, both in the disclosure of assets and

18 the valuation of assets. The Statement of Personal Property failed to disclose or

19 accurately value, *inter alia*, (1) the gun safe which was awarded to Dean in the

20 Dissolution Action, valued at approximately $1,500; (2) as many as 31 firearms which

21 had also been the subject of litigation in the Dissolution Action; and (3) the County of

22 Kern pension plan which had a value between $220,000 and $260,000. The evidence also

23 showed that Dean had cash in excess of $500 in the bank accounts, and he owned a

24 collection of hobby equipment referred to as "mountain man" equipment worth

25

26    [2]The standard form Declaration Concerning Debtor's Schedules which Dean signed and dated

27 September 1, 2005, stated, "I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 18 sheets, and that they are true and correct to the best of my knowledge,

28 information, and belief."

4

1  approximately $1,000.

2      Dean never did pay the Marital Debt which he agreed to pay in the Dissolution

3  Action and now seeks to discharge that obligation in this bankruptcy. However, he did

4  pay the debt secured by the Bayliner boat months before it was due to be paid off.

5  **ISSUES.**

6      The key issue presented in this adversary proceeding is did Dean, knowingly and

7  fraudulently, in or in connection with the case, make a false oath or account when he

8  failed to list or accurately value all of his assets on the bankruptcy schedules. The second

9  issue is whether the settlement and final judgment in the Dissolution Action were

10  obtained by fraud. Teresa contends that Dean promised to pay the Marital Debt as

11  consideration for the division of property when he was secretly preparing to file

12  bankruptcy and seek a discharge of that obligation.

13  **ANALYSIS AND CONCLUSIONS OF LAW.**

14  **Section 727 Denial of Discharge.**

15      Denial of discharge under § 727(a)(4) requires the plaintiff to show that the debtor

16  knowingly and fraudulently, in or in connection with the case, made a false oath or

17  account. The false oath or account must relate to a "material fact." *Fogal Legware of*

18  *Switzerland, Inc. v. Sheldon Wills and Joan Wills (In re Wills)* 243 B.R. 58, 62 (9th Cir.

19  BAP 1999), citing *In re Aubrey*, 111 B.R. 268, 274 (9th Cir. BAP 1990). The "false

20  oath" may be a false statement or an omission in the schedules. *Id.*, citing *In re*

21  *Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

22      Denial of a discharge is a severe sanction and § 727 is construed strictly in favor of

23  the debtor. *In re Murray*, 249 B.R. 223, 227 (E.D.N.Y. 2000). However, a bankruptcy

24  discharge is a privilege and may only be granted to the honest debtor. *In re Leija*, 270

25  B.R. 497, 501 (Bankr. E.D. Cal. 2001), citing *Dubrowsky v. Perlbinder (In re*

26  *Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000) (additional citations omitted).

27      The purpose of laws such as §727(a)(4) is, "to make certain that those who seek

28  the shelter of the bankruptcy code do not play fast and loose with their assets or with the

5

1 | reality of their affairs." *In re Leija*, 270 B.R. at 501, citing *Boroff v. Tully (In re Tully)*,
2 | 818 F.2d 106, 110 (1st Cir. 1987). Section 727(a)(4) is intended to enforce the debtor's
3 | duty of disclosure and to ensure that those with an interest in the administration of the
4 | estate receive reliable information. "'Bankruptcy Trustees lack the time and resources to
5 | play detective and uncover all the assets and transactions of their debtors.'" *In re Bailey*,
6 | 147 B.R. 157, 163 (Bankr. N.D. Ill. 1992), citing *In re Martin*, 141 B.R. 986, 997 (Bankr.
7 | N.D. Ill.1992).

8 | **The Bankruptcy Schedules Constitute an "Oath."**

9 | When the debtor signs and files his bankruptcy schedules, he attests, under penalty
10 | of perjury, that the facts represented therein, including the disclosure of assets, is
11 | complete and accurate. The signing and verification of bankruptcy schedules under
12 | penalty of perjury constitute an "oath" for purposes of § 727(a)(4). *In re Leija*, 270 B.R.
13 | at 502.

14 | **The Omissions in Dean's Schedules Related to a Material Fact.**

15 | The false "oath or account" must be as to a material fact. Materiality is defined
16 | broadly, it "may be material even if it does not cause direct financial prejudice to
17 | creditors." *Wills,* 243 B.R. at 62-63, citing *In re Chalik*, 748 F.2d 616, 618 (11th Cir.
18 | 1984). "Since § 727(a)(4) relates to the discovery of assets and enforces debtors' duty of
19 | disclosure, an omission can be material, even if the creditors were not prejudiced by the
20 | false statement." *In re Bailey*, 147 B.R. 157 at 163. Conversely, "a false statement or
21 | omission that has no impact on a bankruptcy case is not material and does not provide
22 | grounds for denial of a discharge under § 727(a)(4)(A). *Khalil v. Developers Surety and
23 | Indemnity Company (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007) (citations
24 | omitted).

25 | Here, Dean's schedules failed to fully and accurately disclose valuable assets,
26 | including numerous guns, an expensive gun safe, valuable hobby equipment, and a
27 | significant pension, some or all of which could have been administered by the trustee for
28 | the benefit of the creditors. In his testimony at the trial, Dean admitted, and his counsel

6

1  later acknowledged, that there were omissions and misstatements regarding the disclosure
2  and valuation of assets in Dean's Schedule B and in his Statement of Financial Affairs.
3  These assets were the subject of negotiation and were "material" to the division of
4  property in the Dissolution Action. The court is persuaded, and Dean's counsel
5  acknowledged in closing arguments, that the omissions in Dean's schedules were material
6  for the purposes of § 727(a)(4)(A).

7  **The Falsity Was Made Knowingly.**

8  The false statements must be made both "knowingly" and "fraudulently." Courts
9  have interpreted the "knowing" element to require more than carelessness or recklessness.
10  Dean cites *In re Roberts*, 331 B.R. 876 (9th Cir. BAP 2005) in support of his contention
11  that the bankruptcy schedules were not "knowingly" false.

12  In *Roberts*, the Bankruptcy Appellate Panel reversed the bankruptcy court's denial
13  of the debtor's discharge. The BAP concluded that the trial court's findings of fact failed
14  to establish that the debtor "acted deliberately and consciously" in failing to make the
15  subject disclosures. The *Roberts* court held that neither carelessness nor recklessness
16  "measure up to the statutory requirement of 'knowing' misconduct." *Id.* at 884. The
17  plaintiff must show that the debtor "knowingly and fraudulently made a false oath."
18  *Wills*, 243 B.R. at 64 (citation omitted). The statutory requirement that the false oath be
19  made "knowingly" is satisfied if the defendant's act is voluntary and intentional. *Leija,*
20  497 B.R. at 501.

21  Here, Dean had begun preparing for this bankruptcy in February 2005, after
22  commencement of the Dissolution Action and before entry of the final judgment in June
23  2005. Dean filed the bankruptcy petition in September of 2005. Dean is employed in law
24  enforcement as a homicide investigator. The court can infer that Dean is specially trained
25  to report the results of his investigations with accuracy, and that he fully understands the
26  importance of accurate reports in any subsequent judicial proceeding. Dean filled out his
27  bankruptcy attorney's questionnaire, he had an opportunity to correct any errors or
28  omissions in the schedules, and he signed them under penalty of perjury attesting to their

7

1 completeness and accuracy. He subsequently amended his schedules and could have used
2 that opportunity to correct any errors or omissions, but declined to do so.
3    The most troubling aspect of Dean's defense is the fact that he had just been
4 through the Dissolution Action in which all of the omitted assets were the subject of
5 negotiation and were ultimately awarded to Dean. Having just gone through the
6 Dissolution Action, Dean had to have been fully aware of the following facts: that the gun
7 safe was in Dean's home and had been awarded to him; that some 30 odd firearms were
8 in his home and had been awarded to him; that the pension awarded to Dean as his
9 separate property had been valued in the Dissolution Action at more than $200,000; that
10 his checking and savings account balances were not zero on the date he signed the
11 schedules; and that he owned "mountain man" hobby equipment worth approximately
12 $1,000. From all of these facts, the court is persuaded that Dean was not just reckless in
13 the preparation of his schedules. The omissions and inaccuracies in Dean's schedules
14 were deliberate and conscious, and they were made knowingly for purposes of
15 §727(a)(4)(A).
16 **The Falsity Was Fraudulent.**
17    Finally, the plaintiff must show also that the debtor "fraudulently" made a false
18 oath, and the fraudulent intent was actual, not merely constructive. *Wills,* 243 B.R. at 64
19 (citations omitted). "'The party objecting to the discharge must show that the information
20 was omitted for the specific purpose of perpetrating a fraud and not simply because the
21 debtor was careless or failed to fully understand his attorney's instructions. . . . [I]t is
22 important to note that under section 727(a)(4)(A), a reckless indifference to the truth is
23 sufficient to sustain an action for fraud.'" *Murray,* 223 B.R. at 228, quoting *Dubrowsky,*
24 244 at 571-72 (citations omitted). "The statutes are designed to insure that complete,
25 truthful, and reliable information is put forward at the outset of the proceedings, so that
26 decisions can be made by the parties in interest based on fact rather than fiction . . . .
27 '[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's
28 veracity and his willingness to make a full disclosure.'" *In re Leija,* 497 B.R. at 501

8

1   (citation omitted).

2        The Ninth Circuit Bankruptcy Appellate Panel has recently clarified the "fraud"

3   standard, "[E]vidence of reckless indifference to accuracy may be probative of intent

4   even though reckless indifference alone does not suffice to establish the requisite intent."

5   *In re Khalil*, 379 B.R. at 166. Since debtors seldom admit fraudulent intent, fraudulent

6   intent must usually be proven by circumstantial evidence or inferences drawn from the

7   debtor's course of conduct. *Id.* at 174 (citations omitted).

8        At trial Dean admitted that he retained possession of the gun safe and all but two

9   or three of the firearms, but testified that most of the guns in his possession belonged to

10  his mother and that he was merely "holding" them for her. This testimony is contradicted

11  by his Statement of Financial Affairs[3] and by the state court's findings that Dean had

12  either acquired the guns before marriage, or inherited the guns upon his father's death. In

13  any event, the state court had awarded the guns and the gun safe to Dean before the

14  bankruptcy petition was filed, and they should have been disclosed.

15       It is clear that firearms are important to Dean. The court is persuaded that Dean

16  omitted the firearms and the gun safe from his schedules in the hope that the trustee

17  would close the case without administering those assets. The court is further persuaded

18  that the misrepresentations and omissions on his schedules with regard to his bank

19  accounts, the pension plan, and the hobby equipment were at least made with "reckless

20  disregard for the truth." Taken as a whole, these omissions prevented the trustee and

21  creditors from gaining a clear picture of Dean's financial status.[4] The court is persuaded

22  that Dean did not take seriously his duty to fully and accurately disclose his assets, and

23  that he had no intent to make the full extent of his assets known to the bankruptcy trustee.

24

25       [3]Dean's Statement of Financial Affairs at paragraph 14 states that he was not holding any
     property for another.

26       [4]On March 8, 2006, the chapter 7 trustee filed a Report of No Distribution stating that the trustee

27  had not received any assets which could be liquidated for distribution to creditors. Two days later, the
     Debtor amended his schedules with regard to his valuation of the pension plan, and to disclose his

28  deferred compensation plan. The other assets were omitted from the amended schedules.

9

1    **Section 523(a)(2)(A) Objection to Discharge.**

2            Teresa also objects to discharge of Dean's obligation to pay the Marital Debt.

3    Section 523(a)(2)(A) denies discharge of a debt to the extent obtained by "false pretenses,

4    a false representation, or actual fraud . . . ." To prevail under § 523(a)(2)(A), Teresa must

5    prove by a preponderance of the evidence each of the following elements: (1) that Dean

6    made material representations; (2) knowing them to be false; (3) with the intent and

7    purpose of deceiving Teresa; (4) that Teresa actually and justifiably relied on the

8    misrepresentations; and (5) that the misrepresentations proximately caused the loss or

9    damage. *In re Pierce*, 323 B.R. 21, 27 (Bankr. D. Conn., 2005), citing *AT & T Universal*

10   *Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001) (en banc)

11   (citations omitted). The elements of § 523(a)(2)(A) must be proven by a preponderance

12   of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755

13   (1991).

14           Dean never told Teresa during the Dissolution Action that he had retained

15   bankruptcy counsel. Teresa testified that she would not have agreed to a settlement in the

16   Dissolution Action if she had known that Dean was making preparations to seek

17   bankruptcy relief. She would have demanded that marital assets be sold to pay the

18   Marital Debt if Dean had not assumed that obligation. In response, Dean testified that he

19   was not planning the bankruptcy at the time he agreed to assume approximately $36,000

20   in Marital Debt, and that he only decided to proceed with the bankruptcy after he made

21   some payments and found that he could not afford them. However, Dean offered no

22   evidence to show that he had actually paid any of the Marital Debt. Further, Dean had

23   retained Williams and paid the chapter 7 filing fee, months before the settlement was

24   reached in the Dissolution Action. Dean used his money to pay off the debt against the

25   Bayliner boat, but he made no apparent effort to pay the Marital Debt. The court is

26   persuaded that Dean did not intend to pay any of the Marital Debt at the time he promised

27   to do so in the Dissolution Action. That promise was material to the division of property

28   in favor of Dean, and Teresa justifiably relied on that promise in final settlement of the

10

1  Dissolution Action.

2       The problem with Teresa's fraud claim is one of damages.  No evidence was

3  introduced at trial to show that Teresa has suffered a loss or damage as a result of Dean's

4  failure to pay the Marital Debt.  There was no evidence that Teresa has paid any of the

5  Marital Debt, or that she has been asked to pay or been sued by any of the affected

6  creditors.  Accordingly, the claim for relief under § 523(a)(2)(A) will be denied.  In any

7  case, the denial of Dean's discharge under §727(a)(4)(A) preserves his liability for the

8  Marital Debt and leaves Teresa with essentially the same rights and protection she had

9  *vis-a-vis* Dean and the "Marital" creditors as she had before the bankruptcy.

10 **CONCLUSION.**

11      Based on the foregoing, the court finds and concludes that Dean made a materially

12 false oath when he knowingly and fraudulently omitted from his bankruptcy schedules a

13 substantial collection of firearms, an expensive gun safe, and valuable hobby

14 accouterments, and in materially understating the value of his bank accounts and the

15 value of his pension plan.  Dean's discharge will be denied pursuant to § 727(a)(4)(A).  A

16 separate judgment will be entered.

17      Dated:  February ___, 2008

18

19

20                    W. Richard Lee
                      United States Bankruptcy Judge

21

22

11